UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:07-CV-89-R

STANLEY BURROUGHS, et al.                                                                      PLAINTIFFS

v.

WESTLAKE VINYLS, INC., et al.                                                                 DEFENDANTS

**MEMORANDUM OPINION**

  This matter comes before the Court on Defendants Westlake Vinyls Inc.'s, Westlake Chemical Corporation, and Westlake PVC Corporation's Motion for Summary Judgment (Docket #22). Plaintiffs Stanley Burroughs, James Madison, and James Solinsky have responded (Docket #24). Defendants have replied (Docket #26). This matter is ripe for adjudication. For the reasons that follow, Defendants' motion is GRANTED.

**BACKGROUND**

  Defendant Westlake manufactures and sell polyvinyl chloride ("PVC") and other chemicals used to make PVC. Defendant operates a plant located in Calvert City, Kentucky, which manufactures vinyl chloride monomers, chlorine-alkaline and olefins, and PVC. Defendant's operations require thousands of feet of pipeline to transport the various chemicals throughout the plant. To maintain the facility, Defendant employs approximately ninety full-time maintenance workers, including approximately thirty-one pipefitters. Defendant's maintenance staff performs routine maintenance on its pipelines on an almost daily basis. Routine maintenance includes repairing, removing, and replacing pipelines and valves.

  Defendant entered a contract with Enerfab for Enerfab to provide "supplemental maintenance

support." Defendant maintains approximately eighty-six Enerfab maintenance workers at the Calvert City plant on most days. However, Defendant occasionally shuts down its chemical production to perform required maintenance. These turnarounds last for one or two weeks. Since Defendant began operating the Calvert City plant in 1990, there have been eight turnarounds. Defendant shutdown its plant for one week in 1993, 1998, 2003, and 2007. It shutdown its plant for two weeks in 1991, 1995, 2001, and 2006.

Defendant uses the shutdowns as an opportunity to perform a substantial amount of necessary maintenance. This requires a large number of workers in order to perform as much maintenance as possible during the shutdown. During the most recent two-week turnaround in 2006, Defendant used 439 Enerfab employees to supplement Defendant's own maintenance staff.

Plaintiffs Stanley Burroughs, James Madison, and James Solinsky are union pipefitters and employees of Enerfab. They do not normally work at Defendant's Calvert City plant. Instead, Plaintiffs were among that additional Enerfab employees brought in to work during the latest two-week turnaround. On May 12, 2006, Plaintiffs were ordered by their supervisor, Chuck Liles, to change thirty-nine valves and pipe sections, as well as three manifolds. After unbolting a valve, all three Plaintiffs were exposed to chemicals. Plaintiffs received medical attention, and work stopped on that particular maintenance project for the day. Plaintiffs' work order was eventually completed by one of Defendant's employees.

Plaintiffs have made a claim for, and received, Workers' Compensation benefits though the policy carried by Enerfab. Plaintiffs also filed suit, alleging that Defendant was liable to Plaintiffs for their injuries caused by the chemical exposure. Plaintiffs originally filed this action in Marshall Circuit Court in Marshall County, Kentucky on May 4, 2007. Defendant removed the case to this

Court on June 7, 2007. Defendant now moves for summary judgment, arguing that Plaintiffs' claims are barred by Kentucky's Workers' Compensation Act.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

Defendant argues that Plaintiffs' claims are barred by Kentucky's Workers' Compensation

3

Act, specifically KRS 342.690 and KRS 342.610.  KRS 342.690 provides that "[i]f an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee . . . ."  The statute states that an "employer" includes "a 'contractor' covered by subsection (2) of KRS 342.610."  KRS 342.610(2), in turn, defines a "contractor" as "[a] person who contracts with another . . . [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person."  Together, these provisions "form the basis for what is known as the 'up the ladder' defense: an entity 'up the ladder' from the injured employee and who meets all the qualifications of a 'contractor' under KRS 342.610(2) is entitled to the immunity provided by KRS 342.690."  *Davis v. Ford Motor Co.*, 244 F. Supp. 2d 784, 786 (W.D. Ky. 2003).

Defendant argues that it is a statutory employer under the definition found in KRS 342.610, as the work that Plaintiffs were doing at the time of the incident was a "regular or recurrent" part of its business.  Plaintiff asserts that Defendant does not have "up the ladder" employer immunity under KRS 342.690 as the work that Plaintiffs were engaged in at the time of the accident was not a regular and recurrent part of the work done by Defendant.

The issue is whether Plaintiffs' work was a regular or recurrent part of Defendant's business.  In *General Electric Co. v. Cain*, 236 S.W.3d 579 (Ky. 2007), the Kentucky Supreme Court explained the factors used to determine whether a particular activity is a "regular or recurrent" part of an employer's business within the context of KRS 342.610(2).

Regular or recurrent activities are "customary, usual, or normal to the particular business (including work assumed by contract or by law) or work that the business repeats with some degree

4

of regularity, and is of a kind that the business or similar businesses would normally perform or be expected to perform with employees." *Cain*, 236 S.W.3d at 588. This test is relative, not absolute. *Id.* This issue is a mixed question of fact and law for the Court to decide. *Id.* at 589. The conclusion that a defendant is entitled to summary judgment "must be supported with substantial evidence that a defendant was the injured worker's statutory employer under a correct interpretation of KRS 342.610(2)(b)." *Id.* at 585.

The parties disagree about what exactly constitutes the "work" that must be regular and recurrent. Federal courts in this district have looked to the work by the contractor required under the contract, as well as the individual work performed by the plaintiff. *See e.g. Kubas v. Klondike Manor, LLC,* No. 3:07-CV-148, 2008 WL 243947, at *2 (W.D. Ky. 2008), *Murphy v. Louisville Gas & Elec. Co.*, No. 3:07CV-77, 2007 WL 3231550, at *2 (W.D. Ky. 2007).

In this case, Defendant's contract with Enerfab states that Enerfab is being hired to "provide partial requirements for Supplemental Maintenance Support as needed." The purpose behind the contract was for Enerfab to supplement Defendant's own maintenance staff. Plaintiffs are pipefitters, and Defendant has a number of pipefitters as its own employees.

The work done in this case falls squarely within the definition of "regular or recurrent". Enerfab provided Defendant supplemental maintenance support. Maintenance work occurred on a daily basis at Defendant's plant. The specific work done by Plaintiffs, changing pipes and valves, also occurred on an almost daily basis. The nature of Defendant's business requires them to change out pipes and valves regularly. The work of changing out pipes and valves is regularly done by Defendant's own employees.

Plaintiffs argue the "work" the Court should examine in determining if the work was regular

or recurrent is the work done during the two-week turnaround.  Plaintiffs rely on the large amount of work performed during the turnaround, the large number of Enerfab employees used during the turnaround, and the fact that Defendant was not producing chemicals during the turnaround to argue that the two-week turnaround is not a regular or recurrent part of Defendant's business.  However, even when the Court focuses on whether the turnaround satisfies the legal requirements of "up the ladder" immunity, the Court still finds that Defendant was Plaintiffs' statutory employer.

First, the two-week turnaround was repeated with some degree of regularity.  Defendant's would shutdown the plant for some period of time once every few years, and would shut down the plant for a two-week period approximately every five years.  "'Recurrent' simply means occurring again or repeatedly. 'Regular' generally means customary or normal, or happening at fixed intervals. However, neither term requires regularity or recurrence with the preciseness of a clock or calendar." *Daniels v. Louisville Gas & Elec. Co.*, 933 S.W.2d 821, 824 (Ky. Ct. App.1996).  In this case, shutting down the plant every five years meets the requirements for being a  recurrent activity under Kentucky law.

The work done during the turnaround was also work that is of a kind the business would normally perform with employees.  There is no evidence that any work that took place during the turnaround that was anything more than normal maintenance, which was performed regularly by Defendant's employees.  While Plaintiffs mention in passing that capital projects were performed during the turnaround, there is no evidence that any Enerfab employee worked on those projects. There is no indication that Enerfab employees, or Plaintiffs in particular, brought specialized skills or tools that were unavailable to Defendant's employees.  The only difference between regular maintenance and the maintenance during the turnaround  is the amount of work done.

6

That Defendant brought in extra contract workers rather than hiring its own employees does not prevent the work from being of a kind that Defendant's would normally be expected to perform with employees. *See Cain*, 236 S.W.3d at 603 (upholding summary judgment for an employer who used outside contractors "for jobs that involved more work than employees could handle, even on an overtime basis, or for jobs that had to be performed in a tight timeframe."). Even if Defendant never performed its own maintenance work, and only used contractors, it would be a "distinction without significance", so long as the maintenance work done is usually a regular or recurrent part of a such a business. *Fireman's Fund Insurance Co. v. Sherman & Fletcher*, 705 S.W.2d 459, 461 (Ky. 1986).

The evidence before the Court clearly indicates that shutting down production periodically to perform required maintenance on the pipes used to distribute Defendant's product meets this requirement. The production of PVC is an important part of Defendant's business, and its transportation around the plant through adequately maintained pipelines is a necessary part of Defendant's operations. The maintenance and repair of the pipes used to distribute a manufacturer's product is a routine and regular part of the manufacturer's business under Kentucky law. *Bratcher v. Conopco, Inc.*, No. 2003-CA-002153, 2008 WL 2065202, at *2 (Ky. App. 2008) (defendant was entitled to "up the ladder" defense when contractor was hired to maintain pipes, plaintiff was injured while performing maintenance on a steam pipe, and defendant used pipes to transfer its product around the plant). Adequately maintaining the pipelines is something that is expected of Defendant's kind of business, even if the maintenance requires a shut down of production and the hiring of additional workers.

Finally, Plaintiffs argue that under *Cain*, workers brought in for a major project are not

employees under the statute. "Employees of contractors hired to perform major or specialized demolition, construction, or renovation projects generally are not a premises owner's statutory employees unless the owner of similar businesses would normally expect or be expected to handle such projects with employees." *Cain*, 236 S.W.3d at 588.

The Kentucky Supreme Court looks to the project the contractor was hired to perform, not to the projects of the individual employees. In this case, Enerfab was not hired to perform the two-week turnaround in 2006. Enerfab instead contracted to provide Defendant with supplement maintenance staff. Providing supplemental maintenance support is not a major or specialized demolition, construction, or renovation project.

In any event, the two-week turnaround was not a major or specialized demolition, construction, or renovation project. While there was a large number of people working during the turnaround, the work that was being done was the same maintenance work that occurs at the plant on a daily basis. There is no evidence in the record that indicates that any part of the turnaround included work that was not substantially similar to the work performed at Defendant's plant on a daily basis. There is nothing in the record which would indicate that the work done during the turnaround required specialized tools or skills not used during regular maintenance at the plant. The two-week turnaround is better characterized as a large-scale, but routine, maintenance project. Under Kentucky law, routine maintenance projects are a regular or routine part of a defendant's business. *Granus v. North American Philips Lighting Corp.*, 821 F.2d 1253, 1257 (6th Cir. 1987).

Kentucky courts offer guidelines used to determine if a project is a routine maintenance project. "[W]hen characterizing a project as routine maintenance or capital improvement, the trial court should consider whether the owner capitalized and depreciated its cost for tax purposes or

deducted its cost as a business expense." *Wakefield v. Manning Equipment, Inc.*, No. 2006-CA-000345, 2008 WL 898079, at *2 (Ky. App. 2008). "Capitalized costs tend to indicate that the business was not the injured worker's statutory employer, while expensed costs tend to indicate that the owner was the statutory employer." *Cain*, 236 S.W.3d at 588. In this case, the cost of the work done by Plaintiffs was deducted as a business expense, rather than capitalized and depreciated. Therefore, under Kentucky law, Plaintiff's work was routine maintenance.

"[E]mployees of contractors hired to perform routine repairs or maintenance are generally viewed as being statutory employees under the Act. Such maintenance work on an employer's physical plant is classified as a matter of law to be a regular and recurrent part of the employer's business." *Bratcher v. Conopco, Inc.*, No. 2003-CA-002153, 2008 WL 2065202, at *2 (Ky. App. 2008). Given the substantial evidence before the Court that Enerfab and Plaintiffs' work was a regular and recurrent part of Defendant's business, the Court finds that Defendant has satisfied the requirements for "up the ladder" immunity. Therefore, Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.